147 N.J. Super. 240 (1977)
371 A.2d 99
IN THE MATTER OF THE HOBOKEN TEACHERS' ASSOCIATION CHARGED WITH CONTEMPT OF COURT. IN THE MATTER OF THE BOARD OF EDUCATION FOR THE SCHOOL DISTRICT OF HOBOKEN CHARGED WITH CONTEMPT OF COURT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1976.
Decided January 21, 1977.
*241 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Emil Oxfeld argued the cause for Hoboken Teachers Association (Messrs. Rothbard, Harris & Oxfeld, attorneys).
Mr. Benjamin D. Leibowitz, Deputy Attorney General, argued the cause for intervenor State of New Jersey (A-334-75) (Mr. William F. Hyland, Attorney General, attorney; Mr. David S. Baime, Deputy Attorney General, of counsel).
Mr. Emil Oxfeld, prosecutor appointed by the court, argued the cause pro se (A-673-75).
Mr. Robert W. Taylor argued the cause for Hoboken Board of Education.
*242 Mr. Guy S. Michael, Deputy Attorney General, argued the cause for intervenor State of New Jersey (A-673-75) (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
On September 4, 1975 the Hoboken teachers went on strike and remained out of school until September 23, 1975. The board of education then petitioned the Chancery Division for an order declaring the strike illegal and enjoining the Hoboken Teachers' Association from engaging in any further strike activity. On the same date the Chancery Division judge issued an order enjoining the strike and directing both parties to continue to negotiate during the period of the order.
On September 9, 1975 the members of the Association continued the strike, in violation of the September 4 order. On September 15, 1975 the Chancery Division judge issued an order directing the Association to show cause, on September 23, 1975, before Judge O'Brien, why it should not be held in contempt. Additionally, inasmuch as it was established that the board did not begin to negotiate with the Association until September 13, 1975, the judge also issued an order returnable on the same date for the board to show cause why the complaint should not be dismissed and the board held in contempt for failing to negotiate in accordance with the terms of the September 4 order.
On the return date, after a hearing, Judge O'Brien dismissed the contempt citation against the board. He also found the Association guilty of contempt for failing to cease its illegal strike in violation of the September 4 order. It is the former ruling from which the Association appeals, (Docket A-673-75), and the latter decision that forms the basis for its separate appeal (Docket A-334-75).
Judge O'Brien indicated that both parties' actions in this case might fall within the same category, "refusing to negotiate in good faith", N.J.S.A. 34:13A-5.4a(5) which *243 would thus place the subject matter within the "exclusive" jurisdiction of the Public Employees Relations Commission. However, it was emphasized that there was "a distinction between the acts of these two defendants" that necessitated a different result. In this regard he pointed out that:
it is doubtful in my mind and I have not concluded that PERC has exclusive jurisdiction concerning strikes by public employees, notwithstanding that there may be a determination of that as an unfair labor practice, in that I conceive as an additional reason a need for prompt action in the event of strikes by public employees which affect the public good, may affect the health and safety of the public. Therefore, it would seem to me that the Chancery Court in its traditional role should be available to fill that public need.
Accordingly, it would appear that although the court recognized that even if PERC has "exclusive" jurisdiction over the board's failure to negotiate, and might have such jurisdiction over the Association's activities, public policy requires that the courts be available to enjoin illegal strikes by public employees that threaten the public welfare.
He construed the "exclusive power" language contained in N.J.S.A. 34:13A-5.4c to mean "to the exclusion of all other agencies." The judge reasoned that since findings by PERC are reviewable by the Appellate Division pursuant to N.J.S.A. 34:13A-5.4(d) and (f), the Legislature could not have intended to remove all such questions from judicial review. Accordingly, he concluded that "the court is not divested of any jurisdiction, it is simply the Chancery Division that is divested."
Thus, finding the Association guilty of contempt, Judge O'Brien fined it $100,000, of which $95,000 was suspended. The Association was then placed on probation for one year, and as a condition thereof the members were required to return to school on the following day, September 24. It was further ordered that if the Association failed to comply, it would be a violation of probation and a $5,000 fine would be imposed for each day teachers failed to return to school.
*244 The teachers did not return to the schools, and on October 3, 1975 a hearing was held before Judge O'Brien on a charge of probation violation, specifically as to the days of September 24, 25, 26, 29, 30 and October 1, 2 and 3. Finding defendant in violation of probation, the judge directed the Association to pay $5,000 a day for each day the members were on strike, or a total of $40,000.
On October 9, 1975 defendant petitioned the court for a remission of the fine. On October 23, 1975 and November 10, 1975, after testimony and argument had been presented before the court, Judge O'Brien denied the petition. The Association is thus appealing (1) the original judgment of conviction and (2) the denial of its petition for remission of the $40,000 fine.
The Association challenges the rulings below on the following grounds: (1) if N.J.S.A. 34:13A-5.4(a) (5), (b) (3) and c, give PERC "exclusive jurisdiction" to remedy alleged failures to negotiate, to the extent that it removes such questions from judicial review, it should be declared unconstitutional; (2) if the above statute gives PERC the exclusive authority to remedy alleged failures to negotiate on the part of the board, it also has the authority to review the Association's failure to negotiate because, although strikes are not specifically listed as an unfair labor practice in N.J.S.A. 34:13A-5.4(b), such activity is implied within the meaning of "refusing to negotiate in good faith."
The argument advanced by the board, similar to that which is asserted by the State as an intervenor, is that since strikes do not constitute an independent unfair labor practice so as to require primary adjudication by PERC, N.J.S.A. 34:13A-5.4(c) does not preclude the courts from exercising their traditional equity jurisdiction to enjoin acts which threaten the public welfare.
The relevant statute, N.J.S.A. 34:13A-5.4(a) (5) and (b) (3) provides:
*245 a. Employers, their representatives or agents are prohibited from: * * *
(5) Refusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit, or refusing to process grievances presented by the majority representative. * * * b. Employee organizations, their representatives or agents are prohibited from: * * *
(3) Refusing to negotiate in good faith with a public employer, if they are the majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit. * * *
Under subsection 5.4(c) of the above statute PERC is given certain powers in connection with the above:
c. The commission shall have exclusive power as hereinafter provided to prevent anyone from engaging in any unfair practice listed in subsections a. and b. above. Whenever it is charged that anyone has engaged or is engaging in any such unfair practice, the commission, or any designated agent thereof, shall have authority to issue and cause to be served upon such party a complaint stating the specific unfair practice charged and including a notice of hearing containing the date and place of hearing before the commission or any designated agent thereof; * * *
* * * If, upon all the evidence taken, the commission shall determine that any party charged has engaged or is engaging in any such unfair practice, the commission shall state its findings of fact and conclusions of law and issue and cause to be served on such party an order requiring such party to cease and desist from such unfair practice, and to take such reasonable affirmative action as will effectuate the policies of this act. * * *
In Patrolman's Benev. Ass'n. v. Montclair, 70 N.J. 130 (1976), plaintiff association argued that, as the selected representative of the town's police officers, it was entitled to an order directing defendant town to negotiate with it and to be restrained from enacting any ordinance establishing salaries and other wage benefits for police which might hinder such negotiations. The town refused to negotiate, claiming that plaintiff was not the properly authorized representative.
The court found that the New Jersey Employer-Employee Relations Act, as amended by L. 1974, c. 123, accorded *246 "PERC jurisdiction to hear and decide unfair labor practice charges and to issue appropriate remedial orders." 70 N.J. at 136. Accordingly, the case was remanded to the trial court with directions to enter an order transferring the dispute to PERC so that a determination could be made with respect to the identity of the employee representative, and regarding the dispute over the fixing of salaries and wage benefits. 70 N.J. at 135-136. The court, however, did not directly address itself to the question of whether PERC's jurisdiction was exclusive in the sense of precluding the Chancery Division from exercising its traditional equity jurisdiction. The court noted, however:
We * * * concur with the trial court's holding that PERC should initially resolve the representation issue. This position is consonant with the principle of primary jurisdiction. * * * And the trial court may well have retained jurisdiction pending that determination. [70 N.J. at 135; emphasis supplied]
The doctrine of primary jurisdiction was first enunciated by the Supreme Court of the United States in Texas & P.R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). There a shipper claimed that a published carrier rate was unreasonable, and it sued the carrier in a state court for the excess. The Supreme Court reversed the state court judgment, holding that no such action would lie in the state court. It concluded that the Interstate Commerce Commission was solely competent to determine whether the carrier rate was reasonable. It held that the Commerce Act was intended, by establishing a uniform published rate, to abolish preferences and discrimination. If power existed in state courts to revise a published rate, there could be no uniformity, and this "would render the enforcement of the act impossible." 204 U.S. at 441, 27 S.Ct. at 355.
Professor Jaffe, in his Judicial Control of Administrative Action (1965), describes the doctrine of primary jurisdiction as an attempt to resolve both the procedural and substantive *247 conflicts inevitably created when there is carved out for an agency an area of original jurisdiction which impinges on the congeries of original jurisdictions of the courts. He further states
Primary jurisdiction situations arise when the original jurisdiction of a court is being invoked to decide the merits of a controversy: the facts, the law, the relief; and when it is thereupon held that the jurisdiction of the court either to decide one of the relevant issues or to entertain the action at all has been superseded by agency jurisdiction. Primary jurisdiction is ordinarily pro tanto exclusive jurisdiction; insofar as the agency has jurisdiction it excludes the courts. But a court, though not competent to decide one of the issues, may still have jurisdiction over the cause of action to which decision of the issue is relevant. The jurisdiction of the court will extend to the remaining issues and to the relief to be granted. [at 121]
The doctrine has also been recognized as related to the principle of exhaustion of administrative remedies, but distinct in the following respect:
The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. [United States v. Western P.R. Co., 352 U.S. 59, 63-64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)]
We find the doctrine of primary jurisdiction to be applicable to the cases presently before us. We find nothing in the Public Employer-Employee Relations Act of 1974 (L. 1974, c. 123) which demonstrates a legislative intent to deprive the courts of jurisdiction over common law actions arising out of the conduct of the parties to these appeals. *248 As a general rule, jurisdiction of an administrative agency may be said to be exclusive when the remedy which the agency is empowered to grant is the only available remedy for the given situation. Clearly, that general observation does not apply to the facts before us.
The judgment of contempt against the Association (Docket A-334-75), arose because it violated an order entered September 4, 1975 which restrained activity by the Association which was unlawful, viz, a concerted work stoppage, or strike. See In re Buehrer, 50 N.J. 501 (1967); Union Beach v. N.J.E.A. Bd. of Ed. et al., 53 N.J. 29 (1968). The jurisdiction of an equity court (the Chancery Division) to enjoin such activity is beyond question. In re Block, 50 N.J. 494 (1967); Buehrer and Union Beach, above. In addition, the statutory scheme which creates PERC and gives it its powers confers no right of injunctive relief on that agency. The right to such relief requires resort to the courts. The reason for this apparent dichotomy should be obvious. Whenever public employees resort to the illegal activity of a strike, necessarily the general public must suffer harm in some way. Immediate relief is required in most instances. That relief may more readily be obtained in a short period of time in the courts which are accustomed to deal with such situations, rather than by resort to an administrative agency which would require hearings and determinations before relief might be given. This right of resort to the courts for injunctive relief does not in any manner constitute a usurpation of the substantive issues which may exist between an employee's union and the employer, i.e., those matters which precipitated the strike, or which have bogged down negotiations. A court entertaining an application for injunctive relief will never pass on those issues. Those questions will be referred by the parties to the agency, or where appropriate, by the court itself. The function of the injunctive order under these circumstances is to preserve the status quo. Accordingly, we find no merit in the argument of the Association with *249 respect to the jurisdiction of the court. In addition, our review of the records satisfies us that Judge O'Brien's conclusion that the Association contemned the order issued September 4 to be more than amply supported by the record.
At the time the Chancery Division judge issued his order, he was prevailed upon to add the following clause thereto:
It is further ordered that the parties continue to negotiate during the period of this order.
When it was subsequently determined that the board had failed to negotiate with the Association for several days after service of the order, the judge issued an order citing the board for contempt of the original order. It was this citation that was dismissed by Judge O'Brien for want of jurisdiction. We disagree with his conclusion and reverse.
At the time that the Chancery Division judge entered the order requiring the parties to negotiate, no complaint as to an unfair labor practice had been filed or was before him. Since the failure to negotiate, if established, constitutes an unfair labor practice under N.J.S.A. 34:13A-5.4(a) (5), such a complaint, if it had been presented to him, should have been transferred to PERC under the doctrine of primary jurisdiction. See N.J.S.A. 34:13A-5.4(c). Under the circumstances presented here, it is apparent that the order to negotiate entered by the Chancery Division judge was done improvidently. However, in so entering that order he did not exceed his jurisdiction. Rather, he somewhat impugned on the doctrine of primary jurisdiction. That this is so does not reduce that portion of the order requiring the parties to negotiate nugatory and warrant the discharge of the order to show cause with respect to the alleged contempt thereof by the board of education. The proper procedure for the Board to have followed was to have applied to the Chancery Division judge for a transfer of the question of negotiation to PERC and a vacation *250 of the provision of the order in question. Clearly, the Board was not empowered to ignore that provision thus adjudicating its effect unilaterally.
In view of our conclusion, we are constrained to reverse Judge O'Brien's dismissal of the citation of the Board of Education for contempt and remand that issue to the law division for trial.
The Association also argues that Judge O'Brien should have reduced the amount of the $40,000 fine because its members were unable to comply with the September 4 order due to the following circumstances: (1) the schools had been closed by resolution of the board on September 9, 1975 and were not reopened until October 7, 1975; (2) an advertisement by the board in two local papers suggested that the schools were closed, and (3) teachers stayed away because they were concerned about their potential liability under Workers Compensation Laws on returning to schools which were officially closed.
We find the argument to be without merit. The record discloses that the schools were, in fact, open on the days in question. John Kane, vice-principal of the Wallace School, testified that he went back to school on September 24 and at that time there were teachers and students in the school, and "to the extent that it was possible, the school functioned" on the days in question. Moreover, no teacher testified that he or she did not return to school because the schools were closed, or because the teachers were in fear of their physical safety. In this regard, Judge O'Brien noted:
* * * after the Court imposed that condition of probation in the presence of the leadership of that group, [the teachers] that group * * * at a meeting, voted to table the resolution advanced by the Trustees that they return to school in accordance with the Court's order.
Further, in response to defendant's claim that the teachers were unable to comply with the court's order, Judge O'Brien emphasized:
*251 * * * all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, he must comply promptly with the order pending appeal. [Quoting from Maness v. Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975)].
See also, In re Tiene, 17 N.J. 170, 177 (1954); In re Jersey City Education Ass'n, 115 N.J. Super. 42, 49 (App. Div. 1971). Accordingly, we conclude Judge O'Brien correctly found the Association to have violated probation and that the imposition of the fine of $5,000 a day was reasonable. See, e.g., In Re Parsippany-Troy Hills Education Ass'n, 140 N.J. Super. 354, 360-61 (App. Div. 1975); Newark Bd. of Ed. v. Newark Teachers Union, 114 N.J. Super. 306, 317 (App. Div. 1971).
The judgment of the Chancery Division is affirmed both with respect to the adjudication of contempt, the imposition of the fine levied on the Association and the quantum thereof in Docket A-334-75. The judgment of the Law Division in Docket A-673-75 dismissing the contempt citation and the order to show cause issued against the Hoboken board of education for the School District of Hoboken is reversed, and the cause is remanded to the Law Division for appropriate proceedings thereunder. We do not retain jurisdiction.
No costs to any party.