779 A.2d 1124 (2001)
TOWN OF KEARNY, Plaintiff-Respondent,
v.
HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION and Alan J. Steinberg, Executive Director, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 2001.
Decided September 28, 2001.
*1125 Masha D. Rozman, Deputy Attorney General argued the cause for appellants (John J. Farmer, Jr., Attorney General, attorney; Nancy Kaplen, Deputy Attorney General, of counsel, Ms. Rozman, on the brief).
Kenneth P. Davie, Harrison, argued the cause for respondent (Cifelli & Davie, attorneys; Mr. Davie on the brief).
Before Judges BAIME, NEWMAN and FALL.
The opinion of the court was delivered by NEWMAN, J.A.D.
On leave granted, this appeal concerns whether the Department of Environmental Protection (DEP) is the proper forum to determine whether a town in which an access road to a transfer station is located is entitled to a "host community benefit" payment under N.J.S.A. 13:1E-28.1. The trial court ruled that while the DEP has exclusive jurisdiction to decide the amount of the payment, the DEP and Law Division have concurrent jurisdiction to determine what comprises a transfer station and whether a town is eligible for payment under the host community benefit statute. We now reverse and transfer the action to the DEP for further proceedings.
The facts are not in dispute. Hackensack Meadowlands Development Commission (HMDC) is a state agency that was created to oversee the development or redevelopment of the Hackensack Meadowlands District which encompasses several municipalities.
HMDC entered into an agreement with Waste Management of New Jersey, Inc. (Waste Management) on September 7, 2000, leasing 10.73 acres located in the Borough of North Arlington (North Arlington) to Waste Management for use as a transfer station. A transfer station is a type of DEP regulated solid waste facility as defined in the Solid Waste Management Act (SWMA), N.J.S.A. 13:1E-3. The transfer station serves as a facility where nonhazardous waste is delivered to an enclosed building on the property, the waste is sorted, useful materials are salvaged and the remaining waste is collected and shipped by solid waste vehicles to an off-site sanitary landfill or other disposal area.
Trucks delivering waste to and from the transfer station must exit State Highway No. 7Belleville Turnpike, and utilize Baler Boulevard to enter and subsequently exit the transfer station. Baler Boulevard is a private road that is owned, in part, by HMDC. This is the only access road to the transfer station. Part of Baler Boulevard is located in the Town of Kearny (Kearny).
Upon learning of the proposed lease agreement between HMDC and Waste Management, Kearny met with HMDC representatives in August 2000 asserting that Kearny was entitled to quarterly payments under the host community benefit provision of N.J.S.A. 13:1E-28.1. Such host community benefit payments had been provided to North Arlington under the contract between HMDC and Waste Management. The statute provides in pertinent part:
Any municipality within which a transfer station is located pursuant to an adopted and approved district solid waste management plan shall be entitled to an annual economic benefit to be paid or adjusted not less than quarterly in an amount established by agreement with the owner or operator of the transfer station or by order of the [DEP][1], but *1126 not less than the equivalent of $0.50 per ton of all solid waste accepted for transfer at the transfer station.... For the purposes of calculating the payments, the owner or operator of the transfer station may, subject to the prior agreement of the relevant municipality and the approval of the [DEP], provide the municipality with any of the following benefits in consideration for the use of land within its municipal boundaries as the location of a transfer station: [alternative payment methods listed].

[N.J.S.A. 13:1E-28.1a.]
Kearny attempted to negotiate payments under the statute with HMDC representatives since access to the transfer station in North Arlington was only available by use of Baler Boulevard and therefore, Kearny argued, the access road was an integral part of the transfer station. Kearny also requested payments for use of a weighing facility located in Kearny. However, use of the Kearny weighing facility has been discontinued since November 20, 2000.
Kearny and HMDC were unable to reach an agreement. On October 25, 2000, Kearny filed a Complaint in the Law Division in Hudson County, asserting that it was entitled to a host community benefit for use of the weighing station and access road and requesting that the HMDC negotiate in good faith with Kearny to determine the amount of the benefit.
On November 29, 2000, HMDC filed a motion to dismiss the complaint for failure to exhaust administrative remedies or for transfer of Counts I and II to the DEP. HMDC also filed a Motion to Dismiss Count III of the Complaint for failure to state a claim which relief upon can be granted. However, Kearny withdrew Count III of the complaint without prejudice before consideration by the court.
HMDC argued that under N.J.S.A. 13:1E-28.1, the DEP was responsible not only for determining how much a host municipality is entitled to, but whether, as a threshold issue, there is any entitlement to those payments at all. HMDC further argued that if a municipality and the owner or operator of a transfer station cannot come to an agreement, the municipality must petition the DEP for an appropriate order before resorting to the courts for resolution.
The trial court concluded that while the DEP did have exclusive authority to determine the amount of benefits a host community is entitled to, the DEP did not have exclusive jurisdiction to decide the threshold issue of entitlement to a host benefit. The court reasoned that no special expertise was needed in determining what constitutes a transfer station location. The court decided that there was concurrent jurisdiction between the DEP and the courts. In denying the motion, the court considered the doctrine of exhaustion of administrative remedies, but concluded it did not militate in favor of transferring the action to the DEP.
On appeal, HMDC argues that the trial judge failed to correctly analyze the exhaustion of administrative remedies doctrine. Had it been properly done, there is no question that the action should have been dismissed and transferred to the DEP. More fundamentally, the HMDC argues that the primary jurisdiction should have been with the DEP. We agree.
The SWMA was enacted to establish a statutory framework within which all solid waste activity would be coordinated under the supervision and regulation of the DEP. The DEP was given the power to arbitrate disputes between solid waste management districts and to take such *1127 other actions in accordance with the policies set forth in the act. N.J.S.A. 13:1E-2b(1),(6).
Under the SWMA, DEP has the exclusive responsibility to approve the locations of transfer stations. Anyone who proposes to operate such a facility must file a registration statement and engineering design to the DEP and obtain approval from that agency. N.J.S.A. 13:1E-5; N.J.S.A. 13:1E-26. Upon receiving a complete copy of any application for a registration statement and/or engineering design approval for a solid waste facility, DEP is required to transmit, by certified mail, a copy of the application to the affected municipality. N.J.S.A. 13:1E-5.1. Where an application for review by the DEP is for a proposed solid waste facility "on a site located in more than one municipality, the notices required herein shall be transmitted to each affected municipality, and all of the affected municipalities shall be considered a single party for the purposes of the public hearing held concerning the application." N.J.S.A. 13:1E-5.2.
This statutory scheme contemplates that the DEP is exclusively responsible for approving the location of transfer stations and for determining whether a proposed facility is located in more than one municipality. N.J.S.A. 13:1E-28.1 and N.J.S.A. 13:1E-5.2 should be read together. Brown v. Township of Old Bridge, 319 N.J.Super. 476, 498, 725 A.2d 1154 (App.Div.1999)(citing Mimkon v. Ford, 66 N.J. 426, 433, 332 A.2d 199 (1975)) ("Statutes which deal with the same matter or subject and which seek to achieve the same overall legislative purpose should be read `in pari materia.'"). Doing so, it is apparent that the Legislature intended to vest exclusive jurisdiction in the DEP to determine whether the proposed facility is located in more than one municipality.
For purposes of administering the host community benefit statute, it would, therefore, be congruent for the DEP to make the threshold determination of whether a particular municipality is entitled to the host community benefit when it is indelibly clear that the DEP has the jurisdiction to determine the amount of payments where an agreement cannot be reached between the municipality and the transfer station owner or operator. We are satisfied that this is what has been envisioned in the legislative scheme. A plaintiff may not seek relief in the trial court when the Legislature has vested exclusive primary jurisdiction in an agency. Abbott v. Burke, 100 N.J. 269, 297, 495 A.2d 376 (1985). This action should have proceeded before the DEP, not the courts.
We are satisfied that the trial court erred in determining that the DEP and the court had concurrent jurisdiction. In our judgment, exclusive jurisdiction to determine this issue resided with the DEP. Because we have so concluded, we need not further analyze the applicability of the exhaustion of administrative remedies doctrine. Even, were we to do so, it would be clear that the doctrine would easily apply, achieving the same result we have concluded should obtain here by way of legislative expression.
The order entered is reversed and the action is transferred to the DEP for further proceedings.
NOTES
[1] The Board of Public Utilities was redesignated the Board of Regulatory Commissioners and transferred to the DEP in 1991.