**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0216-23

CHARLES KRATOVIL,

    Plaintiff-Appellant,

v.

CITY OF NEW BRUNSWICK and
ANTHONY A. CAPUTO, in his
capacity as Director of Police,

    Defendants-Respondents.

_____

Argued January 29, 2024 – Decided April 26, 2024

Before Judges Gilson, DeAlmeida, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3896-23.

Alexander R. Shalom argued the cause for appellant (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander R. Shalom and Jeanne M. LoCicero, on the briefs).

Susan K. O'Connor argued the cause for respondents (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Susan K. O'Connor, of counsel and on the

brief; Roland Rachel-Leigh Adelman, Christy Leigh Cushing, Michael V. Manning, and Niki A. Waters, on the brief).

Vito Anthony Gagliardi, Jr., argued the cause for amicus curiae New Jersey State Association of Chiefs of Police (Porzio, Bromberg & Newman, PC, attorneys; Vito Anthony Gagliardi, Jr., of counsel; David Lawrence Disler and Thomas J. Reilly, on the brief).

Richard Joseph De Fortuna argued the cause for amicus curiae New Jersey State Lodge of the Fraternal Order of Police (Markowitz & Richman, attorneys; Matthew D. Areman and Richard Joseph De Fortuna, on the brief).

Paul Lewis Kleinbaum argued the cause for amicus curiae New Jersey State PBA (Zazzali PC, attorneys; Paul Lewis Kleinbaum and Sheila Murugan, on the brief).

Randolph E. Mershon, III, argued the cause for amicus curiae County Prosecutors Association of New Jersey (County Prosecutors Association of New Jersey, attorneys; Joseph B. Paravecchia and Laura C. Sunyak, of counsel; Randolph E. Mershon III, of counsel and on the brief).

Robert Rudden Cannan argued the cause for amicus curiae State Troopers Fraternal Association of New Jersey (Markman & Cannan, attorneys; Robert Rudden Cannan, on the brief).

Frank L. Corrado argued the cause for amicus curiae Reporters Committee for Freedom of the Press (Barry, Corrado & Grassi, Katie Townsend (Reporters Committee for Freedom of the Press) of the California, New York, and District of Columbia bars, admitted pro

hac vice, Mara Gassmann (Reporters Committee for Freedom of the Press) of the Virginia and District of Columbia bars, admitted pro hac vice, and Julia Dacy (Reporters Committee for Freedom of the Press) of the District of Columbia bar, admitted pro hac vice, attorneys; Frank L. Corrado, Katie Townsend, Mara Gassmann, and Julia Dacy, on the brief).

PER CURIAM

Plaintiff Charles Kratovil, who writes for and edits an online publication, brought an as-applied constitutional challenge to Daniel's Law, N.J.S.A. 56:8-166.1; N.J.S.A. 2C:20-31.1. Daniel's Law provides, among other things, that upon notice, a person shall not disclose the home addresses of certain public officials, including judges, prosecutors, and law enforcement personnel.

Defendants the City of New Brunswick (the City) and Anthony Caputo, the former Director of the City's Police Department, notified plaintiff that he should not re-publish Caputo's home address. Plaintiff appeals from an order dismissing his complaint and denying his request for injunctions prohibiting defendants from applying Daniel's Law to him if he re-publishes Caputo's home address. Because Daniel's Law as applied to plaintiff in these circumstances does not violate his constitutional rights of free speech and free press, we affirm.

A-0216-23

I.

The material facts are not in dispute. We discern those facts from plaintiff's complaint and the record on plaintiff's motion for injunctive relief. Because the trial court also dismissed plaintiff's complaint, we view the facts in the light most favorable to plaintiff. See Smerling v. Harrah's Ent., Inc., 389 N.J. Super. 181, 186 (App. Div. 2006).

Plaintiff is a journalist who writes for and edits New Brunswick Today, an online publication. As the name of the publication suggests, it focuses on local news about the City.

Defendant Caputo is a retired police officer who then became Director of the City's Police Department. Caputo was also a Commissioner of the City's Parking Authority. He served in both those positions through 2023 and retired from those positions in early 2024.

In 2023, plaintiff noted that Caputo was not attending City Council meetings, nor was he regularly attending Parking Authority meetings in person. On March 14, 2023, plaintiff sent Caputo an email asking if Caputo still lived in the City. The Deputy Director of Police responded on Caputo's behalf, stating, in relevant part: "The public release of a law enforcement officer's place of residence is protected under Daniel's Law."

4

Plaintiff came to believe that Caputo was living in Cape May. To confirm that belief, plaintiff filed a request under the Open Public Records Act (the OPRA), N.J.S.A. 47:1A-1 to -13, with the Cape May County Board of Elections (the Cape May Board), requesting Caputo's voter profile. Initially, the Cape May Board provided a redacted version of Caputo's voting profile to plaintiff in March 2023. After follow-up communications from plaintiff, in April 2023, the Cape May Board produced a voter profile with fewer redactions. That voter profile included Caputo's home address.

At meetings of the City's Parking Authority and the City Council conducted on March 22, 2023 and April 5, 2023, respectively, plaintiff asked if Caputo still lived in the City. Neither Caputo nor anyone else from the City definitively responded to plaintiff's question.

On May 3, 2023, plaintiff attended another City Council meeting. The City and plaintiff separately recorded that meeting. During the public comment portion of the meeting, plaintiff discussed Caputo's change of residence, that Caputo's residence in Cape May was approximately a two-hour drive from the City, and that Caputo was serving on the City's Parking Authority even though he was a non-resident. During that discussion, plaintiff stated the street name in Cape May where Caputo was registered to vote. He also provided City

Council members with copies of Caputo's voter profile, which included Caputo's complete home address.

On May 15, 2023, plaintiff received a letter notifying him that Caputo was invoking Daniel's Law to prevent re-publication of his home address. That letter stated:

> On Wednesday, May 3, 2023, you published and/or announced my home address at a public meeting of the New Brunswick City Council. Kindly accept this letter [as] a written notice as required by [Daniel's Law].
>
> Pursuant to N.J.S.A. 2C:20-31.1 and N.J.S.A. 56:8-166.1, and as an authorized and otherwise covered person whose home address and unpublished home telephone number are not subject to disclosure, I do hereby request that you cease the disclosure of such information and remove the protected information from the internet or where otherwise made available.
>
> I trust you will be guided accordingly.

On July 12, 2023, plaintiff filed a verified complaint and order to show cause seeking temporary and permanent restraints. Plaintiff stated that he planned to publish an article about Caputo living in Cape May, which would include Caputo's home address. So, plaintiff sought a declaration that Daniel's Law was unconstitutional as applied to his intended publication. He also sought preliminary and permanent injunctions prohibiting defendants from seeking to impose civil or criminal sanctions on him if he published Caputo's home address.

6

Finally, plaintiff sought attorney's fees and costs under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2.

In accordance with Rule 4:28-4, plaintiff provided notice to the New Jersey Attorney General that he was constitutionally challenging Daniel's Law. Eventually, the Attorney General declined to intervene in this case. In a letter submitted to the trial court, the Attorney General explained that although he had an interest in defending Daniel's Law from a facial constitutional challenge, he deemed plaintiff's actions to be an as-applied challenge, which was limited to the specific facts of this case. In that regard, the Attorney General stated: "Plaintiff's entire theory rests on his factual assertions that he obtained the underlying information lawfully, that the information is otherwise still available, and that he is a journalist who wishes to publish that information in a story relating to a high-level official's residency."

After plaintiff amended his complaint, the trial court issued an order directing defendants to show cause why they should not be enjoined. On September 21, 2023, the trial court heard arguments on plaintiff's application. At the end of arguments, the court announced its decision on the record and

denied all relief requested by plaintiff. The court also dismissed plaintiff's complaint. That same day, the court issued an order memorializing its rulings.[1]

In explaining its decision, the trial court found that plaintiff had obtained Caputo's home address lawfully through an OPRA request to the Cape May Board. Accordingly, the trial court rejected defendants' argument that plaintiff had illegally or improperly obtained the information by misleading the Cape May Board into disclosing Caputo's home address.

Turning to the substance of plaintiff's constitutional challenge, the trial court reasoned that plaintiff was a journalist and that the distance between where Caputo lived and where he worked was a matter of public concern. The court held, however, that the relevant information was that Caputo lived in Cape May, and that his exact street address was not a matter of public concern. The court then held that Daniel's Law was constitutional as applied to plaintiff's situation because the law was narrowly tailored to achieve a governmental interest of the highest order: protecting State officials from potential acts of violence and harassment.

---

[1] The trial court took the proposed order submitted by plaintiff, stamped "DENIED" on that order, and crossed out the various provisions of relief sought by plaintiff. The order was entitled, "FINAL ORDER." We note that it would have been a better practice for the court to have prepared its own order setting forth its rulings.

Following the trial court's ruling, plaintiff sought appellate emergent relief. Both we and the Supreme Court denied plaintiff's request, but the Supreme Court directed that the appeal "should proceed expeditiously to the extent practicable." Thereafter, we granted plaintiff's application to accelerate this appeal.

## II.

On appeal, plaintiff argues that Daniel's Law is unconstitutional as applied to his intention to publish Caputo's home address because he obtained that address lawfully and it is a matter of public concern. He argues that Daniel's Law as applied to his intended publication is not narrowly tailored and does not protect "a need of the highest order." In making those arguments, plaintiff relies on the United States Supreme Court's decision in Smith v. Daily Mail Publishing Co., 443 U.S. 97 (1979), and a line of cases applying the principle announced in that decision.

The Reporters Committee for Freedom of the Press and several other media organizations filed an amicus brief in support of plaintiff's position. Those amici argue that applying Daniel's Law to plaintiff's publication of Caputo's home address would be an unconstitutional prior restraint on speech and would punish the publication of lawfully obtained truthful information about

9

a matter of public concern. Those amici also argue that application of Daniel's Law to plaintiff will stifle journalism. Finally, they contend that the trial court's ruling effectively infringed on the constitutionally protected exercise of plaintiff's editorial discretion.

In response, defendants argue that Daniel's Law did not and will not impinge on plaintiff's First Amendment rights because Caputo's exact home address is not a matter of public concern. They also argue that Daniel's Law is constitutional because it protects a State interest of the highest order and is narrowly tailored.

Several law enforcement organizations filed amicus briefs supporting defendants' positions. Those amici include the New Jersey State Association of Chiefs of Police, the New Jersey State Lodge of the Fraternal Order of Police, the County Prosecutors Association of New Jersey, the State Troopers Fraternal Association of New Jersey, and the New Jersey State Policemen's Benevolent Association. The amici law enforcement associations echo defendants' arguments that Daniel's Law supports a compelling government interest in protecting the safety of certain government officials and their families. They also argue that Caputo's precise home address is private and should not be subject to the same free speech protections as matters of public concern.

We review these issues de novo. When a matter implicates First Amendment freedoms, appellate courts "'make an independent examination of the whole record,' to ensure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" Ward v. Zelikovsky, 136 N.J. 516, 536-37 (1994) (quoting Milkovich v. Lorain J. Co., 497 U.S. 1, 17 (1990)); see also Rutgers 1000 Alumni Council v. Rutgers, 353 N.J. Super. 554, 567 (App. Div. 2002) (explaining that First Amendment cases require a de novo review). Moreover, the trial court essentially treated the motion as a motion to dismiss because, after denying plaintiff's request for injunctive relief, the court dismissed plaintiff's complaint. We, therefore, review that dismissal de novo. See Doe v. Est. of C.V.O., 477 N.J. Super. 42, 54 (App. Div. 2023).

To put plaintiff's as-applied constitutional challenge in context, we summarize Daniel's Law and the relevant constitutional protections afforded to free speech and free press.

A.    Daniel's Law.

Daniel's Law was enacted by the Legislature and signed into law by the Governor on November 20, 2020. L. 2020, c. 125, §§ 5-6. The law was named for Daniel Anderl, the son of United States District Court Judge Esther Salas. In 2020, a disgruntled attorney went to Judge Salas' home and shot and killed

Daniel. The assailant also severely wounded Judge Salas' husband. The assailant had found Judge Salas' home address on the internet.

Daniel's Law is intended to prevent further attacks on certain government officials and their families. It prohibits the disclosure of residential addresses and personal phone numbers of "covered persons," including active and retired judges, prosecutors, and law enforcement officials. N.J.S.A. 56:8-166.1(d); N.J.S.A. 2C:20-31.1(a). Moreover, Daniel's Law provides that on notice, a person, business, or association shall not disclose or re-disclose the home address or telephone number of a covered person. N.J.S.A. 56:8-166.1(a)(1). Daniel's Law imposes civil penalties for violations, including $1,000 per violation, punitive damages, and attorney's fees. N.J.S.A. 56:8-166.1(c). In addition, a "reckless violation of [Daniel's Law] is a crime of the fourth degree," and a "purposeful violation of [Daniel's Law] is a crime of the third degree." N.J.S.A. 2C:20-31.1(d).

B.    The First Amendment.

The First Amendment, which applies to the states through the Fourteenth Amendment, provides that governments shall not make any law "abridging the freedom of speech." U.S. Const. amend. I. In protecting free speech, the New Jersey Constitution declares: "Every person may freely speak, write and publish

12

his [or her] sentiments on all subjects, being responsible for the abuse of that right.  No law shall be passed to restrain or abridge the liberty of speech or of the press."  N.J. Const. art. I, ¶ 6.

In a line of cases, the United States Supreme Court has repeatedly held that "if a newspaper lawfully obtains truthful information about a matter of public significance[,] then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order."  Daily Mail, 443 U.S. at 103; see also Fla. Star v. B.J.F., 491 U.S. 524, 533 (1989) (quoting Daily Mail and reaffirming that principle).  In Daily Mail, the Court held that the criminal indictment of two newspapers was unconstitutional under a state statute that forbid newspapers from publishing the name of any youth charged as a juvenile offender.  443 U.S. at 105-06.  The newspapers had learned of a shooting by monitoring a police radio frequency and had obtained the juvenile's name from witnesses and law enforcement personnel.  Id. at 99.  The Court explained "that state action to punish the publication of truthful information seldom can satisfy constitutional standards." Id. at 102.

The Supreme Court has applied the principle articulated in Daily Mail in a line of cases decided both before and after the Daily Mail decision.  See Cox

Broad. Corp. v. Cohn, 420 U.S. 469 (1975) (finding it unconstitutional to hold a broadcasting company civilly liable where a television station owned by the company had broadcasted the name of a rape-murder victim, which the station had obtained from courthouse records); Okla. Publ'g Co. v. Dist. Ct. in and for Okla. Cnty., 430 U.S. 308 (1977) (declaring unconstitutional a state court's pretrial order enjoining the media from publishing the name or photograph of an eleven-year-old boy in connection with a juvenile proceeding involving that child, which reporters had attended); Fla. Star, 491 U.S. at 532 (holding unconstitutional damages imposed on a newspaper for publishing the name of a rape victim in violation of a state statute when the newspaper had obtained the victim's name from a publicly released police report).

In establishing and reiterating the Daily Mail principle, the Supreme Court has been careful to base each of its decisions on the facts of the case before it. See Daily Mail, 443 U.S. at 105 (explaining that the Court's holding in that case was "narrow"). In that regard, the Court has explained that its rulings were based on the facts of the cases, and it has "eschewed" pronouncing broad rules. Fla. Star, 491 U.S. at 532-33.

The Court has also declined to decide whether a state's prohibition of the publication of private information is necessarily a prior restraint. See Daily

Mail, 443 U.S. at 101-02.  Nevertheless, the Court has reasoned that resolution of these types of cases does not depend on whether a prior restraint was imposed. Id. at 101.  Instead, the Court has held that First Amendment protections "reach[] beyond prior restraints" and that the relevant issue is whether the statute imposes a sanction on the publication of lawfully obtained truthful information.  Id. at 101-02.  Penalizing publication of lawfully obtained "truthful information about a matter of public significance" is only constitutional when the state is protecting a compelling state interest or has "a need to further a state interest of the highest order."  Id. at 103; see also Fla. Star, 491 U.S. at 536-37.

C.    Application of the Law to the Facts of This Case.

The undisputed facts of this case establish that plaintiff's First Amendment rights have not been violated.  All parties agree, and the record confirms, that the matter of public concern was that Caputo lived in Cape May while serving as the City's Director of Police and a Commissioner of the City's Parking Authority.  In responding to plaintiff's complaint, defendants conceded, and the trial court subsequently held, that plaintiff always had the right to publish that Caputo lived in Cape May, which was a substantial distance from the City, without being subject to Daniel's Law sanctions.  We agree with the trial court's determination that in light of plaintiff's ability to publish that Caputo lived in

15

Cape May without fear of sanction, he was not entitled to injunctive relief. The trial court's conclusion that Caputo's exact street address is not a matter of public concern is supported by the record and consistent with the law. In that regard, we also agree with the trial court that protecting public officials from violent attacks and harassment is a compelling State interest of the highest order. Consequently, given the facts of this case, the trial court correctly determined that plaintiff was not entitled to injunctive relief.

Neither the City nor Caputo imposed a prior restraint on plaintiff. Indeed, the only notice concerning Daniel's Law came on behalf of Caputo. Caputo did not enjoin plaintiff from publishing his home address. Instead, he pointed out that if plaintiff proceeded to publish the home address, plaintiff would be subject to civil penalties and potentially criminal penalties. Obviously, Caputo, as the City's then-Director of Police, could not impose civil or criminal penalties. Instead, those penalties would have to be imposed by a court. See N.J.S.A. 56:8-166.1(b) to (c); N.J.S.A. 2C:20-31.1(d).

There is a commonsense resolution to this as-applied challenge to Daniel's Law. Plaintiff was not prohibited from discussing or publishing the matter of public concern; that is, that Caputo, then a high-ranking City official, lived in Cape May, a substantial distance from the City. He was warned not to publish

A-0216-23

the specific street name and number because that publication might violate Daniel's Law. No penalty was imposed, and no prior court-ordered injunction was issued.

We reject the argument that there was a chilling effect or an unconstitutional editing by the trial court. The amici supporting plaintiff's position argue that the trial court effectively infringed on plaintiff's editorial discretion by not enjoining any potential sanctions under Daniel's Law if plaintiff published Caputo's specific address. They point out that the United States Supreme Court has held that the First Amendment prohibits government from "tampering, in advance of publication, with news and editorial content." Mia. Herald Publ'g Co. v. Tornillo, 418 U.S. 241, 259 (1974) (White, J., concurring). They argue that "neither defendants nor the court should determine that a city or street name—rather than a home address—suffices to fully report a story like the one [plaintiff] is pursuing."

The trial court, however, did not tell plaintiff what he could or could not publish. Instead, the trial court ruled on the issue before it and denied plaintiff's request for temporary and permanent injunctive relief against defendants. In that regard, the trial court stated that the publication of the town where Caputo lived was a matter of public concern, but Caputo's specific street address was

17

not.  The trial court did not, however, enjoin or restrain plaintiff from publishing a story about where Caputo lived while he was a City official.  In other words, in denying plaintiff's request for injunctive relief, the trial court did not direct how plaintiff should act in the future.  Therefore, plaintiff can evaluate Daniel's Law and decide how he will proceed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0216-23