**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1707-16T2

JOAQUIN RUIZ,

      Plaintiff-Appellant,

v.

BRIAN P. STACK, UNION
CITY, and BRIAN STACK
CIVIC ORGANIZATION,

      Defendants-Respondents.

_____

MICHAEL FIGUEROA,

      Plaintiff-Appellant,

v.

THE CITY OF UNION CITY,
BRIAN STACK in his individual
and official capacity, and BRIAN
STACK CIVIC ASSOCIATION,

      Defendants-Respondents.

_____

MARK JULVE,

       Plaintiff-Appellant,

v.

THE CITY OF UNION CITY,
BRIAN STACK in his individual
and official capacity, and BRIAN
STACK CIVIC ASSOCIATION,

       Defendants-Respondents.

_____

JORGE A. PORRES,

       Plaintiff-Appellant,

v.

MAYOR BRIAN P. STACK,
in his official and individual
capacities, CITY OF UNION
CITY, and BRIAN P. STACK
CIVIC ASSOCIATION,

       Defendants-Respondents.

_____

> Submitted November 8, 2018 – Decided March 15, 2019
>
> Before Judges Fuentes, Vernoia and Moynihan.
>
> On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0971-14.
>
> Law Offices of Louis A. Zayas LLC, attorneys for appellants (Louis A. Zayas and Cory Bank, on the brief).

2

Cohen Seglias Pallas Greenhall & Furman, PC, attorneys for respondents City of Union City and Brian Stack (Christopher M. Galusha, of counsel and on the brief).

Riker Danzig Scherer Hyland & Perretti LLP, attorneys for respondent Brian Stack Civic Association (Samuel P. Moulthrop, Zahid N. Quraishi, Ryan L. O'Neill and Joshua M. Carmel, on the brief).

PER CURIAM

Plaintiffs Joaquin Ruiz, Mark Julve, Michael Figueroa, and Jorge Porres (collectively, plaintiffs) are current or former members of the City of Union City (City) Police Department.[1] Each filed a complaint against Brian P. Stack, individually and as the Union City mayor and director of public safety; the City; and a non-profit corporation, Brian Stack Civic Association, Inc. (Association).[2] All four complaints were consolidated.

Plaintiffs alleged Stack utilized his public-safety position as well as the Association to foster a "pay-to-play" culture that rewarded those who supported and contributed to the Association – promoting, protecting and maintaining the

---

[1] The employment status of the officers is as of the date of their merits brief. Plaintiff Willie Sierra was a part of the original consolidated action; he reached a separate settlement with defendants and did not appeal.

[2] The Association was also pleaded as Brian Stack Civic Organization. We utilize the name that appears on the Association's certificate of incorporation.

3                                                                    A-1707-16T2

Mayor's political power – and retaliated against those who did not. Ruiz alleged he was passed over for a promotion and lost monetary compensation, benefits and vacation days as a result of defendants' retaliation against his political association and freedom of speech, in contravention of the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. Figueroa, alleging only political association retaliation, complained he suffered the same damages. Julve also alleged that as a result of defendants' political association and freedom of speech retaliation, he was repeatedly transferred without notice; assigned to undesirable shifts; subjected to "sham disciplinary notices"; suffered reduced pay; and was prevented from gaining promotion. Porres, the only non-active member of the force, having retired, also alleged political association and freedom of speech retaliation, as well as racketeering activity in violation of N.J.S.A. 2C:41-2(c) and -2(d),[3] which resulted in him being passed over for promotion and lost monetary compensation, benefits and vacation days; he also alleged he "suffered

---

[3] This statute is part of our criminal code, N.J.S.A. 2C:41-1 to -6.2, that is based on the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 to 1968. Cannel, N.J. Criminal Code Annotated, cmt. 1 on N.J.S.A. 2C:41-1 (2018). As such, Chapter 41 of the New Jersey criminal code is familiarly known as New Jersey RICO or Little RICO.

anxiety, emotional distress, and family issues as a result of [d]efendants' adverse employment actions."

Plaintiffs appeal from a number of orders entered by two judges who presided over this matter: a June 30, 2016 order granting in part and denying in part plaintiffs' motion to compel discovery;[4] a September 2, 2016 order granting Stack's and the City's motion to quash the depositions of City commissioners; two December 8, 2016 orders granting defendants' motions for summary judgment and a December 12, 2016 order denying reconsideration of those orders; and an April 26, 2017 opinion granting counsel fees to the Association for plaintiffs' failure "to voluntarily dismiss the case against the . . . Association, pursuant to the New Jersey [f]rivolous [l]itigation statute, N.J.S.A. 2A:15-59.1."[5] Additionally, Porres appeals from a February 1, 2016 order dismissing several of his claims as time-barred and precluded by res judicata and an April 26, 2016 motion denying reconsideration of that order.

Based on our review of the record in light of the applicable law, we affirm the discovery rulings and the grant of summary judgment. We, however, reverse

---

[4] The judge also considered opposition filed by Stack, the City and "the . . . Association with an alternative request for a protective order." Neither the opposition nor the request for a protective order are part of the appellate record.

[5] An order memorializing the judge's decision is not part of the appellate record.

the dismissal of Porres's claims in counts three and four of his complaint. We also vacate the award of counsel fees and remand.

I

Plaintiffs contend the trial court erred by not fully granting their motion to compel discovery and, by later order, quashing depositions. We review orders limiting discovery for an abuse of discretion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (citing Bender v. Adelson, 187 N.J. 411, 428 (2006)). "That is, '[w]e generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law.'" Ibid. (alternation in original) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005)). We discern no abuse of discretion by the trial judge who recognized that our discovery rules are to be liberally construed to provide for broad pretrial discovery, see Payton v. N.J. Tpk. Auth., 148 N.J. 524, 535 (1997), but that "[t]he Rules are not . . . unlimited and not unfettered."

Plaintiffs' counsel's certification in support of the motion to compel discovery complained only that the City's deficiencies in response to plaintiffs' request for documents "were notable and patently frivolous." Other than to say that the production request "touche[d] upon the very subject matter of this

lawsuit," counsel did not specify any document nor explain how any request related to the general allegations in plaintiffs' complaints. He merely attached plaintiffs' complaints and 204 pages of discovery requests made, not only to the City, but to Stack and the Association.

Likewise, plaintiffs do not specify in their merits brief the discovery that defendants failed to supply, nor do they relate how any sought-after discovery is relevant to their claims or "appears reasonably calculated to lead to the discovery of admissible evidence." R. 4:10-2(a). General assertions are not sufficient; "[a] claim based on the denial of discovery must indicate the matter which the applicant hopes will be developed." In re Coruzzi, 98 N.J. 77, 81 (1984) (quoting In re Coruzzi, 95 N.J. 557, 574 (1984)). Although plaintiffs' motion to compel involved only the City's discovery responses, the motion judge addressed discovery related to all parties, extending discovery for sixty days and ordering the parties to "submit a proposed discovery schedule, specifically identifying what discovery is to be completed." The judge also ordered the Association to disclose the names and addresses of donors who were promoted over plaintiffs within five years from the date of motion-argument. Plaintiffs agreed to reduce the timeframe for discovery from the City and Mayor from ten years to five. The motion judge ordered the City to disclose lawsuits, verdicts

7

or settlements against or by the City Police Department involving wrongful terminations, retaliations or failures to promote for the same five-year period. The Association was also ordered to produce an index of paper discovery which the judge said he would "consider in deciding . . . whether to expand on" his ruling.

The judge's limitation of plaintiffs' discovery of the Association's donors was not an abuse of discretion. When a plaintiff requests a defendant's financial information our broad discovery practice is tempered by "a regard for the defendant's interest in maintaining the confidentiality of information about its financial status." Herman v. Sunshine Chem. Specialties, 133 N.J. 329, 343 (1993). In reviewing such requests, "a trial court should balance the plaintiff's need for the information . . . with an appreciation that a defendant's finances are private matters which are normally jealously guarded." Id. at 344. Further, the judge's order compelling the City to produce documents for a five-year period, like its order compelling the Association's production of documents, properly narrowed the scope of discovery to that which related to plaintiffs' causes of action. The judge's ruling was not so wide of the mark to constitute an abuse of discretion. See State in Interest of A.B., 219 N.J. 542, 554 (2014).

A-1707-16T2

Plaintiffs also argue the judge "erred by arbitrarily depriving [p]laintiffs of . . . deposition testimony of the very named defendant [Stack] and other [C]ity officials responsible for their unlawful retaliation."[6] The appellate record is bereft of any reason the motion judge gave for his ruling. The record does contain, however, plaintiffs' counsel's certification in opposition to the motion to quash. Counsel simply attached the complaints two plaintiffs, unrelated to this matter, filed against defendants; another complaint an unrelated plaintiff filed against the Association and Stack; and Ruiz's complaint. Counsel made no further certified statement in opposition.

We previously signaled that "high-level government officials, should not be deposed, absent a showing of first-hand knowledge or direct involvement in the events giving rise to an action, or absent a showing that such deposition is essential to prevent injustice." Hyland v. Smollok, 137 N.J. Super. 456, 460 (App. Div. 1975). The New Jersey District Court noted the policy reasons behind such a rule include the public "interest in ensuring that high level government officials are permitted to perform their official tasks without

---

[6] Although the order provides that "the motion to quash the depositions of the City [c]ommissioners is granted," the judge, at a September 30, 2016 hearing, clarified that the order also pertained to Stack's deposition.

A-1707-16T2

disruption or diversion." Buono v. City of Newark, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008). The Buono court cited the Court of Appeals for the First Circuit's observation that, "'this rule is based on the notion that high ranking government officials have greater duties and time constraints than other witnesses' and that, 'without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation.'" Ibid. (quoting Bogan v. City of Boston, 489 F.3d 417, 423-24 (1st Cir. 2007)).

Other courts have relied on the United States Supreme Court's discouragement of calling high-ranking government officials as witnesses, United States v. Morgan, 313 U.S. 409, 422 (1941), in determining that extraordinary circumstances must be shown before such an official can be deposed. Buono, 249 F.R.D. at 471 n.2.; see Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985); see also In re United States (Holder), 197 F.3d 310, 313 (8th Cir. 1999); In re Fed. Deposit Ins. Corp., 58 F.3d 1055, 1060 (5th Cir.1995); In re United States (Kessler), 985 F.2d 510, 511-12 (11th Cir. 1993) (observing the "reason for requiring exigency before allowing the testimony of high government officials is obvious"); In re Office of Inspector Gen., R.R. Ret. Bd., 933 F.2d 276, 278 (5th Cir. 1991) (stating the Court agrees with "our D.C. Circuit colleagues that 'top executive department

officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions'" (quoting Simplex, 766 F.2d at 586)). The First Circuit prescribed a number of factors that must be shown by a party seeking to depose a high-level official:

> (1) that the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that could not be reasonably obtained from other sources; (3) the testimony is essential to that party's case; [(4)] the deposition would not significantly interfere with the ability of the official to perform his government duties; and [(5)] that the evidence sought is not available through any alternative source or less burdensome means.
>
> [Buono, 249 F.R.D. at 471 n.2 (citing Bogan, 489 F.3d at 423-24). See also United States v. Sensient Colors, Inc., 649 F. Supp. 2d 309, 322 (2009) (citing Buono, 249 F.R.D. at 471 n.2).]

Although plaintiffs contend Stack has first-hand knowledge – as Mayor, Public Safety Director and as the namesake of the Association – of the mechanisms used to retaliate against plaintiffs, they have not, by simply attaching complaints to a certification, shown any of the Bogan factors establishing extraordinary circumstances. And, just as they failed to do before the motion judge, plaintiffs have not shown that the non-party City commissioners have any knowledge – much less first-hand knowledge – of, or

11

direct involvement in, any of the acts of which plaintiffs complain. In their merits brief, plaintiffs do not contest that Stack and the City commissioners are high-level government officials. In addressing our holding in <u>Hyland</u>, they argue "the depositions of Mayor Stack and the other [C]ity commissioners are highly essential as they are policy-makers for the City and, thus, have first[-]hand knowledge concerning the City's policy of political patronage and [p]laintiffs' allegations of political retaliation within Union City and its police department." These bald assertions are insufficient to compel the depositions sought.

The motion judge did not abuse his discretion in quashing the depositions.

II

Porres challenges the dismissal with prejudice of CRA claims in counts one and two of his complaint alleging retaliatory failure to promote him to sergeant in 2011 and 2012.[7] Porres argues the motion judge erred in ruling that the retaliatory acts in those two years were discrete, each of which were subject to a two-year statute of limitations. N.J.S.A. 2A:14-2(a); <u>Smith v. Datla</u>, 451 N.J. Super. 82, 99 (App. Div. 2017). Citing to <u>Cowell v. Palmer Township</u>, 263

---

[7] The judge denied defendants' motion to dismiss Porres's 2013 retaliation claim in counts one and two.

F.3d 286 (3d Cir. 2001), Porres contends evidence of retaliation and adverse employment actions against other police officers establish that the 2011 and 2012 claims were part of a chain of events which served to extend the statutory-bar period under the "continuing violation doctrine."

The motion judge dismissed the claims pursuant to defendants' Rule 4:6-2(e) motion – "failure to state a claim upon which relief can be granted" – requiring our plenary review of his decision; we apply the same test as did he. Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 186 (App. Div. 2006). Because our review is de novo, we are not bound by the motion judge's legal determinations. Ibid.

As recognized in Cowell, a case involving claims brought under 42 U.S.C. § 1983, the continuing violation doctrine is an equitable exception to the statute of limitations bar. 263 F.3d at 292; see also Roa v. Roa, 200 N.J. 555, 566 (2010). Under the doctrine, the statute of limitations does not begin to run until "a 'continual, cumulative pattern of tortious conduct . . . ceases.'" Roa, 200 N.J. at 566 (quoting Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999)).

The Roa Court recognized that the United States Supreme Court, considering the doctrine in the context of Title VII of the Federal Civil Rights Act of 1964 claims of retaliatory and discriminatory employment practices,

13

differentiated between discrete acts and continuing violations, noting that some discrete acts, "such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."  The Court continued: "[e]ach [such] incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Accordingly, for limitations purposes, a "discrete retaliatory or discriminatory act occur[s] on the day that it 'happen[s].'"

[Id. at 566-67 (alterations in original) (citations omitted) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)).]

In what our Supreme Court describes as "a 'bright line' rule," 200 N.J. at 567 (quoting O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir.2006)), the Morgan Court made clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  536 U.S. at 113.

The Roa Court – in applying the Morgan holding to a Law Against Discrimination (LAD)[8] case – observed that other "[c]ourts have noted that the distinction between a discrete act and a continuing violation 'is not an artifact of Title VII, but is rather a generic feature of federal employment law.  Thus, in

---

[8]  N.J.S.A. 10:5-12(d).

whatever statutory context the distinction may arise, <u>Morgan</u> will control.'" 200 N.J. at 568 (quoting <u>O'Connor</u>, 440 F.3d at 128).

Heeding the <u>Roa</u> Court's prescription, we apply the <u>Morgan</u> rule to this CRA claim, recognizing the CRA was "modeled off of the analogous Federal Civil Rights Act, 42 [U.S.C.] § 1983," (§ 1983), and New Jersey state courts have used federal law analyzing § 1983 to interpret the CRA's provisions. <u>See</u> <u>Tumpson v. Farina</u>, 218 N.J. 450, 474 (2014) (analyzing the CRA in light of § 1983). Porres's 2011 and 2012 claims alleged discrete acts involving defendants' skipping over him and failure to promote him to sergeant. His 2013 claim alleged defendants retaliated against him by assigning him to a shift that was burdensome to his "family situation." That claim had no relation to the 2011 and 2012 claims which would allow them to be made within the statutory time period as part of a continuing violation. <u>See</u> <u>O'Connor</u>, 440 F.3d at 127. Inasmuch as a "discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s],'" <u>Morgan</u>, 536 U.S. at 110; <u>see also</u> <u>Roa</u>, 200 N.J. at 567, the 2011 and 2012 claims – filed in July 2015, outside the two-year statutory timeframe – were properly dismissed.

Porres also argues the motion judge erred in applying res judicata and the entire controversy doctrine when the judge dismissed the New Jersey RICO

15

claims in counts three and four of his complaint. We review de novo a trial judge's order dismissing an action on res judicata grounds. <u>Walker v. Choudhary</u>, 425 N.J. Super. 135, 151 (App. Div. 2012).

"The doctrine of res judicata 'contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation.'" <u>Culver v. Ins. Co. of N. Am.</u>, 115 N.J. 451, 460 (1989) (quoting <u>Lubliner v. Bd. of Alcoholic Beverage Control</u>, 33 N.J. 428, 435 (1960)). Res judicata "precludes parties from relitigating substantially the same cause of action." <u>Ibid.</u> (quoting <u>Kram v. Kram</u>, 94 N.J. Super. 539, 551 (Ch. Div.), <u>rev'd on other grounds</u>, 98 N.J. Super. 274, 237 (App. Div. 1967), <u>aff'd</u>, 52 N.J. 545 (1968)). "The application of the res judicata doctrine requires substantially similar or identical causes of action and issues, parties, and relief sought," as well as "a final judgment by a court . . . of competent jurisdiction." <u>Ibid.</u> (first citing <u>Eatough v. Bd. of Med. Exam'rs</u>, 191 N.J. Super. 166, 173 (App. Div. 1983); and then quoting <u>Charlie Brown of Chatham v. Bd. of Adjustment</u>, 202 N.J. Super. 312, 327 (App. Div. 1985)).

In determining whether two causes of action are alike or the same, we are required to consider four factors:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which

redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

[Culver, 115 N.J. at 461-62 (citations omitted).]

Porres's 2012 complaint – filed in the Law Division and later removed to federal court – alleged his First and Fourteenth Amendment rights were violated when he was terminated from the police department in 1999 because of his political affiliation; discrimination in violation of the LAD because of his political affiliation and retaliation for complaining of the discrimination; retaliation for pursuing remedies under the LAD and other unspecified laws; and non-specific breach of contract and breach of implied covenant of good faith and fair dealing. The complaint alleged that defendants, including the City and Stack – but not the Association – "unlawfully conspir[ed] to commit adverse employment actions." Those actions, specified in the complaint, were: (1) Porres's termination and, after he was reinstated in 2002, the July 29, 2011 promotion to sergeant of others who politically supported Stack, were unqualified, or who ranked lower on the Civil Service Commission (CSC) list than Porres; (2) harassment by a sergeant not involved in the instant matter; and

A-1707-16T2

(3) assignment to undesirable shifts. Although there is a similarity in some of the allegations, we agree with Porres that the 2012 action, dismissed by stipulation of the parties on August 31, 2012, could not have included allegations contained in the present complaint: that he was passed over for promotion in the fall of 2012 and "retaliated against for his lack of political support when he was reassigned to" an undesirable shift in October 2013.

We disagree with the motion judge's conclusion that Porres "was aware of the alleged racketeering activity and conspiracy" when he was passed over for promotion in July 2011, and therefore "could have pleaded a civil RICO claim in his 2012 [c]omplaint," and raised the "issues surrounding the Association" therein. Contrary to the judge's holding, that "the claims in each [c]omplaint share a 'core set of facts'" and should have been decided in one proceeding, the fact that the fall 2012 and 2013 factual claims may rest on defendants' alleged similar conduct does not meld those discrete claims – which post-dated the dismissal of the 2012 complaint – to the dismissed action so as to warrant their preclusion.

Likewise, we determine the claims related to the fall 2012 and 2013 acts are not precluded by the entire controversy doctrine which "requires a litigant to present 'all aspects of a controversy in one legal proceeding,'" Hobart Bros.

A-1707-16T2

Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 240 (App. Div. 2002) (quoting Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 496 (App. Div. 1978)); see also R. 4:30A. In deciding whether it is appropriate to apply the entire controversy doctrine, we are required to

> consider whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate that claim. In considering that question, a court must remember that the "entire controversy doctrine is not intended to be a trap for the unwary." On the other hand, a court must also be sensitive to the possibility that a party has purposely withheld claims from an earlier suit for strategic reasons or to obtain "two bites at the apple." A court should not permit itself to be made a party to such strategic choices that wreak unfair results upon others.
>
> [Id. at 241 (citations omitted).]

A party does not have a fair and reasonable opportunity to litigate a claim for actions that have yet to occur. Nor can the party purposely withhold those claims. See Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta, P.C., 321 N.J. Super. 275, 283 (App. Div. 1999) ("The entire controversy doctrine does not apply to bar component claims that are either unknown, unarisen or unaccrued at the time of the original action."). We, therefore, reverse and vacate that part of the February 1, 2016 order dismissing counts three and four of

19

Porres's complaint as they relate to the claims arising from alleged acts in fall 2012 and 2013.

III

Plaintiffs' challenge to the decision granting summary judgment as to all three defendants is reviewed under the same standard as the motion judge, Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012): we must determine whether there are any genuine issues of material fact when the evidence is viewed in the light most favorable to the non-moving party, id. at 38, 41. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). "[T]he legal conclusions undergirding the summary judgment motion itself [are reviewed] on a plenary de novo basis." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385 (2010).

Plaintiffs first argue the grants of summary judgment were premature because pretrial discovery was not complete. The discovery period, as extended, closed in mid-October 2016. Plaintiffs received defendants' answers to interrogatories and, as ordered by the motion judge, a list of officers who

20

donated to the Association and were promoted over plaintiffs and a list of lawsuits, verdicts or settlements against or by the police department involving wrongful terminations, retaliations or failures to promote. Plaintiffs failed to depose anyone named in discovery or otherwise connected with their allegations. In light of our determination that the motion judge did not abuse his discretion in limiting discovery, we see no merit to plaintiffs' argument. Aside from the discovery that was properly precluded by the motion judge, plaintiffs have not specified what further discovery was still required. See Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (holding a party claiming summary judgment is premature must "demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action" (quoting Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003))). They have not, as the parties opposing summary judgment, demonstrated more than a generic contention that discovery was incomplete. See Trinity Church v. Lawson Bell, 394 N.J. Super. 159, 166 (App. Div. 2007).

The motion judge, in granting summary judgment to the Association, found plaintiffs "failed to demonstrate that the organization . . . took some

affirmative action . . . at all." It further found the "Association did not act under color of law." Our de novo review leads to the same conclusions.

Plaintiffs allege Stack used the Association "to promote, protect and maintain" his political power in the police department and as a tool to advance his alleged pay-to-play tactics. Plaintiffs aver members of the Association were rewarded and those who did not support the Association were punished.

There is no evidence in the record – including the certification of Joseph Blaettler submitted by plaintiffs in opposition to the summary judgment motions which reprised the allegations regarding the Association that were set forth in plaintiffs' complaints – that the Association acted to punish any plaintiff. Plaintiffs simply allege the Association was used by Stack, not that it took any actions against any plaintiff. Not only does the failure to prove action by the Association warrant dismissal of any claim made by plaintiffs, their failure to provide evidence that the Association – a non-profit corporation – acted under color of law precludes their CRA claims. Perez v. Zagami, LLC, 218 N.J. 202, 215-16 (2014) (holding individuals cannot bring claims under the CRA against individuals who were not acting under "color of [state] law").

We likewise conclude plaintiffs failed to show they suffered political affiliation retaliation for failing to support Stack. As we recognized in Lapolla

22

v. County of Union, 449 N.J. Super. 288, 300 (App. Div. 2017), public employees are protected under the First Amendment "from promotion, transfer . . . and other hiring decisions conditioned on political affiliation," ibid. (quoting Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 270-71 (3d Cir. 2007)). These protections are also afforded against adverse employment actions by an employer who does not fill a position "that would otherwise be available to . . . supporters." Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997).

To establish a prima facie claim of retaliation based on political affiliation, a plaintiff must show: "(1) he was 'employed at a public agency in a position that does not require political affiliation'; (2) he was 'engaged in constitutionally protected conduct'; and (3) the conduct was 'a substantial or motivating factor in the government's employment decision.'" LaPolla, 449 N.J. Super. at 298 (quoting Galli, 490 F.3d at 271). If a plaintiff meets that burden, "the employer may avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." Stephens, 122 F. 3d at 176. If the employer demonstrates a nondiscriminatory reason for the employment action, "plaintiffs may prevail by discrediting that proffered reason, either circumstantially or directly, or by adducing evidence, whether circumstantial or

direct, that discrimination was more likely than not a motivating or substantial cause of the adverse action." Id. at 181.

It is not disputed that plaintiffs' positions as police officers do not require political affiliation. See Montone v. City of Jersey City, 709 F.3d 181, 189 (2013). It is also obvious plaintiffs were engaged in constitutionally-protected activity: "the right not to have an allegiance to the official or party in power." Galli, 490 F. 3d at 272. We analyze the balance of the burden-shifting test as it applies to each plaintiff.

Implicit to meeting the third prong of the prima facie test – that the officer's conduct was a "substantial or motivating factor" in defendants' adverse employments actions – "'is a requirement that the plaintiff produce sufficient evidence to show [that] the defendant knew of [the] plaintiff's political persuasion,' which requires proof of both knowledge and causation." Id. at 275 (alterations in original) (first quoting Stephens, 122 F.3d at 176; and then quoting Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 664 (3d Cir. 2002)). Ruiz's certification that he was solicited to politically support Stack, in 2010 and other unspecified times, by police officers who backed Stack does not sufficiently show that Stack was told of Ruiz's non-support. The Stack supporters were not deposed and Ruiz did not inquire of them about Stack's

A-1707-16T2

knowledge. Nor does Ruiz's account of a March 2012 meeting he had with Stack during which Ruiz said he believed a retired officer was sent a certification notification for promotion. Ruiz related that Stack denied knowledge of that information and that Ruiz was on the promotion list, and said he was "not responsible for certifications, or the certification error" but said he would talk to the police chief and remedy the problem. Ruiz did not tell Stack that he was withholding his political support.

Likewise, Figueroa, who had been a Stack supporter until late 2012 did not establish that Stack knew he was no longer supportive. Figueroa certified that during a conversation in fall 2012, Stack approached him and said "that he 'knew what number [he] was on the list' and to 'keep doing what [he] was doing,'" and that he "extended the promotion list for another year." From that conversation Figueroa "believed that [he] would be promoted." But that conversation – the only communication with Stack that Figueroa alleges – does not charge Stack with knowledge that Figueroa ceased his support, or that the cessation was linked to the adverse employment action against him. His certification that Stack "became fully aware that [he] no longer affiliated himself politically with" Stack and the Association has no support in the record.

Julve was also a Stack supporter until 2011. The only communication Julve alleges with Stack took place in 1999 when Stack, then an ombudsman, asked him to contribute to another politician's campaign. Again, there was no evidence that Stack knew Julve withdrew his support.

None of the plaintiffs presented evidence establishing the third prong of the prima facie test. Their certifications and depositions do not establish that their decision not to support Stack was a substantial or motivating factor in the adverse employment decisions. See Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009) (recognizing that "'conclusory and self-serving assertions' in certifications without explanatory or supporting facts will not defeat a meritorious motion for summary judgment" (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005))).

Even if plaintiffs established a prima facie case, Stack and the City provided legitimate, nondiscriminatory reasons for their alleged adverse employment actions. See Stephens, 122 F.3d at 181. The chief of police certified that the City – a "distressed city," pursuant to N.J.S.A. 52:27D-118.24 to -.31 – is, as conceded by plaintiffs in their depositions, a civil service municipality and "must abide by the rules and regulations established by the [New Jersey CSC]." The chief's certification and attached exhibits established

A-1707-16T2

non-retaliatory reasons for the promotions.      Around August 4, 2011, the CSC created a Certification of Eligibles for Appointment list, which contained the names of fifteen officers. Nine officers were promoted to sergeant from that list in accordance with their exam scores. Another sergeant retired after that round of promotions, and a subsequent promotional list was compiled, again by test scores. Ruiz ranked eighteenth on that promotional list. It was this second list that contained the ineligible retired officer of whom Ruiz complained. But even if the ineligible officer was removed from the list, the officer with the highest exam score – not Ruiz – was promoted. Ruiz admitted in his deposition that the officers with the highest test scores were promoted each and every time.

In 2013, six positions were opened for promotion. Julve's test score placed him eighth on the promotional list. The five candidates with the best test scores were promoted, and the sixth spot was held open "pending disposition of [one officer's] disciplinary charge." That officer was promoted after the disciplinary charge was adjudicated in the officer's favor. Julve conceded in his deposition testimony that all those who were promoted over him had higher test scores. In responding to Julve's charges that he was transferred to his detriment, defendants noted that police officers may be transferred without their consent if there is no contractual language creating an interest in a particular shift.

27

Figueroa's test scores for the captain's exam ranked him the fourth in line for promotion. Stack and the City showed the table of organization was amended "at the direct request of the [New Jersey] Department of Community Affairs, Division of Local Government Services." As a result, there were no captain's vacancies until November 2013. That vacancy was filled by Lieutenant Wolpert, who had a military veteran's preference and higher test scores than Figueroa.

The evidence was sufficient to show that the promotional process in the case of all three plaintiffs comported with CSC practices[9] thus satisfying defendants' burden to show legitimate, nondiscriminatory reasons for their employment actions.

Plaintiffs failed to present evidence that discredited defendants' proffered reasons or showed that retaliation was more likely than not a motivating or substantial cause of the adverse actions. Although they alleged Stack

---

[9] "The New Jersey Constitution prescribes that Civil Service appointments 'shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive.'" In re Foglio, 207 N.J. 38, 40 (2011) (quoting N.J. Const. art. VII, § 1, ¶ 2). Where a police department seeks to promote a candidate with lower test scores, the appointing authority must provide a particularized statement of reasons containing an explanation of "why the higher-ranked candidate was passed over and why that did not violate merit and fitness principles." See id. at 41.

manipulated the civil service rules to make promotions based on political affiliations, they never deposed the CSC individual who allegedly told Ruiz that retired officers were "automatically invalidated for certification" and that Stack was responsible to rectify that problem. The record is replete with allegations but barren of competent evidence to support them. Blaettler's certification contained no information regarding the adverse employment actions against plaintiffs. He claimed to have first-hand knowledge of defendants' pay-to-play tactics but only until he left the department in 2009, years before plaintiffs' claims accrued.

Turning to Ruiz's and Julve's free-speech retaliation claims,[10] public employees enjoy First Amendment protections if they speak as citizens on matters of public concern. Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). The Supreme Court's underlying premise has been "that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" Id. at 420 (quoting Connick v. Myers, 461 U.S. 138, 154 (1983)).

In this case, Ruiz and Julve did not speak at all. They simply declined to politically support Stack. While such action is protected against workplace

---

[10] Figueroa did not assert a free-speech claim.

retaliation, it does not constitute protected speech as contemplated by <u>Garcetti</u> and its progeny.  Plaintiffs did not engage in expressive conduct; they "engaged" in inaction.  Further, even if plaintiffs' actions are considered speech, those actions involved their personal interests, not public concerns.

Inasmuch as plaintiffs presented no genuine issue as to any material fact, defendants were entitled to summary judgment as a matter of law.  <u>Brill</u>, 142 N.J. at 536-37.  Plaintiffs did not address in their merits brief the alleged error by the court in denying their motion to reconsider the denials of summary judgment.  As such that claim is deemed abandoned.  <u>See</u> <u>Gormley v. Wood-El</u>, 218 N.J. 72, 95 n.8 (2014); <u>Drinker Biddle & Reath LLP v. N.J. Dept. of Law & Pub. Safety</u>, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011).

IV

The Association filed a motion "for an award of attorney's fees and sanctions with respect to each of the [captioned] cases."[11]  Counsel's certification in support of the motion clarified that the Association sought attorney's fees against Ruiz, Figueroa, Julve and Porres "and sanctions against [p]laintiffs' counsel, Louis A. Zayas, Esquire."  Counsel's certification explained that the

---

[11] The caption also included a case filed by a plaintiff, Willie Sierra, who is not a party to this appeal.

request for sanctions was based on the CRA's fee-shifting provisions entitling the prevailing party to counsel fees and "the extraordinary failure of [p]laintiffs' counsel to carry out the requisite due diligence and ongoing case evaluation demanded of New Jersey attorneys under New Jersey's [f]rivolous [l]itigation [s]tatute, N.J.S.A. 2A:15-59.1."

As mentioned, the appellate record does not contain the judge's order, only his decision which denied counsel fees pursuant to the CRA's fee-shifting provision, N.J.S.A. 10:6-2(f), but awarded counsel fees to the "Association and against the plaintiff for failing to voluntarily dismiss the case against the . . . Association, pursuant to the New Jersey [f]rivolous [l]itigation statute, N.J.S.A. 2A:15-59.1." We review the motion judge's counsel-fee award to the Association for an abuse of discretion. Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 407 (App. Div. 2009). "Reversal is warranted when 'the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Ibid. (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

Although the judge's opinion indicated counsel fees were awarded to the Association "against the plaintiff," pursuant to the frivolous litigation statute,

31

the Association's motion sought counsel fees against plaintiffs – plural – under only the CRA; that motion was denied.  The certification made clear that it sought sanctions pursuant to the frivolous litigation statute against plaintiffs' counsel – not plaintiffs.  The application before the judge did not seek frivolous litigation counsel fees from plaintiffs.  Thus the award of "counsel fees" by the judge to the Association pursuant to the frivolous litigation statute had to have been made against plaintiffs' counsel – not plaintiffs.  That award contravened the holding in McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 560 (1993), limiting the imposition of sanctions under N.J.S.A. 2A:15-59.1 to parties; [a]ny responsibility for frivolous litigation must be assigned to attorneys pursuant to Rule 1:4-8, Ferolito, 408 N.J. Super. at 407.

Even if the award was made against plaintiffs, we note the judge made no finding that plaintiffs acted in bad faith.  In Ferolito, we determined that when an application is made by a prevailing defendant pursuant to N.J.S.A. 2A:15-59.1(b)(2), as it was in this case, "and the plaintiff is represented by an attorney, an award cannot be sustained if the 'plaintiff did not act in bad faith in asserting' or pursuing the claim."  408 N.J. Super. at 407-08 (quoting McKeown, 132 N.J. at 549).

> The rationale for requiring proof of bad faith is that clients generally rely on their attorneys "to evaluate the

basis in 'law or equity' of a claim or defenses," and "a client who relies in good faith on the advice of counsel cannot be found to have known that his or her claim or defense was baseless." Thus, a grant of a motion for summary judgment in favor of a defendant, without more, does not support a finding that the plaintiff filed or pursued the claim in bad faith.

[Id. at 408 (citations omitted).]

We are, therefore, constrained to vacate the award of counsel fees.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1707-16T2